# Oliver's Appeal.

1. Under the Act of February 24th 1834, section 24 (P. L. 77), all debts of a decedent, not of record, and not expressly charged upon his real estate, cease to be a lien upon his real estate at the expiration of five years from his death, unless such lien is continued by action or proceeding begun within that period, in conformity with the provisions of said Act of Assembly. No admission by heirs or personal representatives will dispense with the necessity for such statutory action or proceeding.

2. No distinction is made as to the character of the debt or demand, and no exceptions to the above rule are recognized, other than those expressly named in said Act.

3. A debt due by a guardian at the time of his death to his ward is not an exception to the above rule.

4. Such a debt is a trust to which the statute of limitations does not apply, and it can be enforced against the decedent's personal estate at any period of time short of that which would raise the common law presumption of payment. But it is not such a trust as will remain a lien on decedent's real estate longer than five years from his death without revival as provided by the above Act.

5. Where the Orphans' Court, upon petition of a ward, filed more than five years after the death of his guardian, made an order upon the administrator of said guardian directing him to sell the decedent's real estate for the payment of a debt due by said guardian at the time of his death to his ward: *Held*, that no proceeding having been taken within five years to continue the lien of said debt against decedent's real estate, such lien had expired, and the order of the court was erroneous.

October 12th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Orphans' Court of *Allegheny county:* Of October Term 1882, No. 108.

From the petitions and answers filed, particularly referred to below, the facts of this case appeared to be as follows:—William Oliver was, in his lifetime, guardian of William Neel and Harvey Neel, and died intestate June 23d 1875, having a large balance in his hands as such guardian, and seised of certain real estate incumbered by liens. George Oliver was appointed administrator of his estate. On October 21st 1875, John A. Stone was appointed guardian of said minors, and from time to time up to August 10th 1880, George Oliver, administrator of William Oliver, deceased, paid various sums to the said Stone, guardian, on account of the said balance due to said minors. On November 4th 1880, George Oliver, administrator, filed an account of William Oliver, guardian, showing a balance due to the said William and Harvey Neel, which was increased by surcharges to the sum of $2,913.75, which amount the court ordered to be paid to the said William and Harvey Neel. The said

[Oliver's Appeal.]

George Oliver also, in pursuance of a citation, filed his account as administrator of William Oliver on April 6th 1881, whereby it appeared that there were no personal assets in his hands sufficient to pay decedent's debts.

On April 23d 1881, a petition was filed in the Orphans' Court of Allegheny county by E. P. Jones, attorney, on behalf of the said William and Harvey Neel (the younger of whom attained his majority March 9th 1880), praying that the said George Oliver, administrator, be required to sell said real estate of which William Oliver died seised, and which was still incumbered by liens, for the payment of said indebtedness.

The answer of George Oliver, administrator, averred, that, more than five years having elapsed between the death of William Oliver and the filing of the said petition, the petitioners were barred by the Act of February 24th 1834 (Purd. Dig. 422, pl. 88).

Thereupon a supplemental petition was filed on behalf of the said William and Harvey Neel, alleging frequent demands upon George Oliver, administrator, within five years from the decedent's death, for the balance due said minors, on which occasions generally a small portion of said indebtedness would be paid on account; that the said George Oliver, administrator, and Mrs. Oliver, widow of William Oliver deceased, always promised to pay said balance as soon as they could collect it from the assets of the estate, with interest at 8 per cent. ; and alleging further that certain allegations were from time to time made by said administrator and widow, with intent to gain time and for the purpose of delaying such payment until the expiration of five years from the death of said William Oliver, after which period they, for the first time, refused to recognize any liability, and set up the bar of the statute.    To this supplemental petition a supplemental answer was filed by the administrator, widow, and all the heirs of William Oliver, deceased, denying the above recited allegations of the' supplemental petition, and re-asserting the bar of the statute.

Some testimony was taken, as to the disputed facts, and after argument, the court filed the following opinion and decree :

"The question involved in this case is ruled by a principle established in Commonwealth *v*. Moltz, 10 Pa. St. 527. In that case the administrators of a deceased guardian filed an account of his trust more than five years after his death, showing a balance in his hands, and suit having been brought against his sureties on his bond, the statute of limitations was set up as bar to the plaintiff's recovery. The court said : 'But, to say nothing of the decree, which is in the nature of a judgment, and therefore not within the Act, the case presents a direct and express trust, over which, in the first instance, the Orphans' Court has

exclusive jurisdiction. The Act has no terms that can be made to embrace claims of this character. This has been so repeatedly settled that it is only necessary to refer, among the multitude of cases, to Thompson *v.* McGaw, 2 W. 161; Doebler *v.* Snavely, 5 W. 225; and Patterson *v.* Nichol, 6 W. 379. It is obvious, this defence would not be open to the guardian were he alive, nor is it more available to his personal representatives, for none of the statutes that have relation to remedies for the recovery of decedents' debts are applicable here. It is obvious, then, that there is no such laches from mere running of time as could operate to bar the claim of the ward against her living guardian. Were he in existence, nothing that has been suggested in the progress of the investigation could shield him from the successful attacks of the plaintiffs: Vincent *v.* Watson, 40 Pa. St. 306. No case has been cited, and none has been found, after diligent search, in which this principle has been overruled.

"The delay in instituting proceedings here is satisfactorily explained by the evidence of the conduct of the administrator, who is also one of the heirs. It was at his instance, and in consideration of a special agreement made with him to pay interest on the amount owing, that time was given. And it was clearly to the advantage of the deceased guardian's estate that time was given. The claim was large, and, had it been pushed, would, in all probability, have caused serious embarrassment in the settlement of the estate. There is no doubt about the validity of the claim. It was not disputed in the distribution of the personal estate of decedent, and received a distributive share from it. There is, therefore, neither law nor equity to the support of the objection made to the relief asked.

"And now, to wit, June 28th, A. D., 1882, this matter came on to be heard, upon petition, citation, and answer, and testimony taken, and was argued by counsel; and, upon consideration thereof, it is ordered, adjudged, and decreed, that George Oliver, administrator, be and he is hereby directed to make application to this court for an order to sell real estate of said decedent, for the payment of debts, including that of petitioners, within twenty days from this date."

George Oliver, administrator, and the widow and heirs of William Oliver, deceased, thereupon took this appeal, assigning for error the said decree.

*D. T. Watson,* for the appellants.—When William Oliver died his estate became debtor to his wards and his wards became creditors of the estate. Under the Act of February 24th 1834, § 24 (P. L. 77), this debt, not having been put in suit, ceased to be a lien on the defendant's real estate at the expiration of five years from his death, and, the lien having expired, the Orphans'

[Oliver's Appeal.]

Court has no jurisdiction to order a sale of real estate for the payment of said debt: Pry's Appeal, 8 Watts, 257; Bindley's Appeal, 19 P. F. S. 299; Demmy's Appeal, 7 Wr. 167; Bailey *v.* Bowman, 6 W. & S. 118; Kessler's Appeal, 8 Casey 392; Maus *v.* Hummel, 1 Jones 228.

*E. P. Jones,* for the appellees.—The guardianship of the decedent was a trust, as to which neither the Act of 1834 nor the general statutes of limitation have any operation: Commonwealth *v.* Moltz, 10 Barr 527; Alexander *v.* McMurry, 8 Watts 504; Baldy *v.* Brady, 3 Harris 111; Steel *v.* Henry, 9 Watts 529. The trusteeship of a guardian is jealously guarded by the Orphans Court and the Legislature. Moreover, the court below was amply justified in finding that the delay in instituting proceedings was satisfactorily explained and was permitted at the instance of the administrator and heirs for the advantage of the deceased guardian's estate.

Chief Justice SHARSWOOD delivered the opinion of the court, October 23d 1882.

Undoubtedly in an action at law or a proceeding in the Orphans' Court or in a court of equity neither the guardian nor his personal representatives could set up the bar of the statute of limitations to the demand of the ward for the balance due him. That statute does not run in any case of a technical trust cognizable in equity, which that growing out of the relation of guardian and ward unquestionably is. This is all that the cases cited and relied upon in the opinion of the learned judge in the court below decided. But they do not touch the question in this case which is, whether the demand of the ward continues a lien upon the land of a deceased guardian more than five years after his death. The words of the 24th section of the Act of February 24th 1834, Pamph. L. 77, are: "No debts of a decedent, except they be secured by mortgage or judgment, shall remain a lien on the real estate of such decedent longer than five years after the decease of such debtor, unless action for the recovery thereof be commenced and duly prosecuted against his heirs, executors and administrators within the period of five years after his decease; or a copy or particular written statement of any bond, covenant, debt or demand, where the same is not payable within the said period of five years, shall be filed within the said period of five years, in the office of the prothonotary of the county where the real estate to be charged is situate, and then to be a lien only for the period of five years after said bond, covenant, debt or demand becomes due." The great object of this Act was to quiet the title of heirs and devisees and purchasers from them to the lands derived from decedents. It

was only necessary for a purchaser or mortgagee to resort to a single office, the prothonotary of the county, to ascertain whether any action had been brought or copy or statement of any demand filed within the period of five years from the decedent's death. If there was no mortgage or judgment at the time of his death, and the office of the prothonotary was clear of any action or statement of demand, he might rest perfectly secure that his title was unincumbered by any debts or demands against the real estate of the decedent, whatever the nature of the demand might be. It was decided in Kerper *v.* Hoch, 1 Watts 9, under a similar provision in the Act of 1797, that it applied for the protection not only of bona fide purchasers, but heirs and devisees, and those claiming under them. No distinction is made in the character of the debt or demand.

By the death of the guardian the guardianship ended, and the balance in his hands was without any doubt a debt of his estate, which, when ascertained by a decree of the Orphans' Court, could be collected from his real estate by proceedings within five years, and from his personal estate at any period short of that which would raise the presumption of payment. It was said by this court in Brindley's Appeal, 19 P. F. Smith 299, on the Act of 1834, that no admission, however solemn, will dispense with an action. " The leaning of this court, through the whole current of the numerous decisions upon this subject, has evidently been to favor the heir and to require of the creditor the vigilant prosecution of his demand in the mode pointed out." No exception has been recognized to the operation of the Act of 1834 other than those expressly named in it. The exceptions expressed necessarily exclude all others. It is a mistake to suppose that the cases of Alexander *v.* McMurry, 8 Watts 504; and Baldy *v.* Brady, 3 Harris 111, have any bearing upon the subject. A testator may create a trust of all or a part of his real estate, and certainly, as to the lands comprised in such trust, the debts would not lose their right of payment by the running of five years or any other period other than such as would raise the presumption of payment. This was all. that was decided in Alexander *v.* McMurry. A devise of lands to executors to be sold for the payment of debts and legacies vests the estate in those as a trust fund for that purpose, and if they neglect to execute the trust the creditors may sell the lands upon a judgment and execution, and the purchaser will take a good title, and in such case there is no limit to the lien of the debts short of a presumption of payment from lapse of time. " Under the trust thus created by the testator," said Mr. Justice Kennedy in that case, " in the residuary clause of his will in favor of his creditors, we are of the opinion that they ought to be considered as having such a lien upon the estate thereby set

[Peebles *v.* City of Pittsburgh.]

apart for the payment of his debts as gave them the right at any subsequent period, however late, as long as the trust remained unexecuted in their favor, to proceed against it by execution." We think, therefore, the decree of the court below directing the administrator to make application for an order to sell the lands was erroneous.

> Decree reversed, and now it is ordered that the petition and supplemental petition be dismissed with costs, and that the costs of this appeal be paid by the appellees.