Estate of Jacob W. Seitzinger, Deceased. Appeal of Amos W. Potteiger, Trustee of Emma B. Hill, Emma B. Hill, Pennsylvania Trust Company and Joanna C. Eckert.

*Dower—Interest on arrears of interest.*

Where a widow is entitled to annual interest in lieu of dower, she is entitled to have interest on arrears of interest from the time the same fall due.

*Trusts and trustees—Creditors—Statute of limitation.*

A testator may create an express active trust of his estate, real or per-

sonal, which shall subject it to the claims of creditors beyond the statutory limitations. Where such a trust is created the debts do not lose their right on the trust estate short of the period which would raise the presumption of payment.

Testator after devising his real estate to his executors in trust to sell or mortgage the same for the payment of debts and legacies, directed that until a certain date named none of the devisees would have a right to insist on the sale of the real estate, except at the discretion of the executors. He further directed as follows: "If with a just regard to the rights of creditors (which are of course to be first regarded) my executors should in their judgment and discretion conceive it more advantageous to the probable ultimate interest of my family that my residuary real estate or any part thereof should remain unsold I recommend that there be no sale of the same." He then directed that after the debts were all paid, the executors should convey what remained by allotments to the legatees. *Held*, that the will contained not a mere power to sell, which unexecuted for five years vested the estate in the heirs, but that it created an actual trust resting on a legal title which vested the estate in the executors until the execution of the trust.

Argued March 5, 1895. Appeal, No. 20, Jan. T., 1895, by Amos Potteiger, trustee, et al., from decree of O. C. Berks Co., overruling exceptions to adjudication. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to adjudication.

The facts appear in Illig's Appeal, supra, and in the opinion of the Supreme Court.

*Errors assigned* were in overruling exceptions to adjudication.

*Jefferson Snyder*, of *Baer & Snyder*, *Philip S. Zieber* with him, for Amos W. Potteiger, trustee of Emma B. Hill et al., and The Pennsylvania Trust Co. — The representatives of Joshua Van Reed's estate have no lien on the fund in court for their dower claim: Oliver's App., 101 Pa. 303; Alexander v. McMurray, 8 Watts, 504; Speel v. Henry, 9 Watts, 528; Trinity Church v. Watson, 50 Pa. 522; Yorks' App., 110 Pa. 81; Campbell v. Fleming, 63 Pa. 242.

Jacob W. Seitzinger did not charge his real estate in such a way as to constitute the claim of the Van Reed heirs a continuing lien upon the whole of his land, and most certainly upon

the fund in court, nor did he empower his executor to do it: Willard's App., 68 Pa. 332; Agnew v. Fetterman, 4 Pa. 56.

The illegitimate children of Mary Agnes Seitzinger never became entitled to the portion of their mother's estate as bequeathed under the 34th or any other clause of the will of Jacob W. Seitzinger.

A gift to children means legitimate children only, unless it appears, from the context or from circumstances, that illegitimate children must have been intended: 2 Jarman on Wills, 786; Opdyke's App., 49 Pa. 378; Ringler's App., 1 Woodward's Decisions, 329; Miller's App., 52 Pa. 113; Grubb's App., 58 Pa. 55; Steckel's App., 64 Pa. 493; McGunnigle & McKee v. McKee, 77 Pa. 81; Johnson's App., 88 Pa. 346; Newbold v. Boone, 52 Pa. 167.

*Philip S. Zieber* and *Baer & Snyder* for Emma B. Hill, Joanna C. Eckert, and The Pennsylvania Trust Company, trustee for Mary Agnes Boardman.

*B. F. Dettra* and *Cyrus G. Derr*, for Joseph Fornance, administrator d. b. n. c. t. a. of Mary Agnes Seitzinger, deceased.

OPINION BY MR. JUSTICE DEAN, October 7, 1895:

In Illig and Brother's Appeal, opinion filed herewith, all the questions raised on this appeal have been decided except those raised by appellants' first to seventh, inclusive, assignments of error. As will be noticed from that decision one of the daughters of Jacob W. Seitzinger, the testator, was Margaret A. She was first married to Joshua Van Reed, by whom she had five children, two of whom died minors and unmarried, before their grandfather; her husband also died before her father, to wit, on the 20th of April, 1846, leaving his widow and the three surviving children, Ann C., Joshua, and Margaret A. The widow afterwards, before the death of her father, on 22d of January, 1849, married John H. Jones, by whom she had three children, Mary A., Ellen A., and Elizabeth S. The wife died on the 8th of September, 1891, leaving her second husband and these three children to survive, and having made a will, of which James K. Getz is executor. The testator, Jacob W. Seitzinger, had taken out letters of administration

on the estate of his deceased son-in-law, Joshua Van Reed; at his death his administration accounts had not been settled; so by the 5th clause of his will he directs his executors: " To settle, adjust and discharge, as soon as may be convenient after my decease, the account of my administration of the estate of the said Joshua Van Reed, deceased."

Joshua Van Reed, at his death, owned a tract of land containing 111 acres in Lower Heidelberg and Cumru townships, Berks county, having mansion house and other improvements thereon; being largely indebted, an order was made by the orphans' court for sale of this property to pay debts; return to this order was made 5th November, 1847, setting out that the administrator had made sale of 106 acres of it at the price of $80.00 per acre, but that the mansion, with about five acres surrounding it, had not been sold; the purchaser was Margaret Van Reed, his daughter. The sale was confirmed. No account was settled for this purchase money at the date of his death. So on the 7th of March, 1851, Richard Boone, the acting executor of Seitzinger, filed the account of his testator as administrator of Joshua Van Reed. In this he charged himself with the full amount of the purchase money with interest due from Mrs. Van Reed, $8,480, and after taking credit for all payments there remained a balance in favor of the estate of $1,170.95. Mrs. Van Reed, as widow, was entitled to the interest on one third of this $390.92.

John Schwartz had been appointed guardian of her three minor children; on 10th November, 1848, he presented his petition to the orphans' court for leave to sell, because unproductive, the five acres on which was the mansion house, and which had not been sold by the administrator; an order of sale was granted, to which he made return that he had sold the same to Richard Boone for the sum of $2,500, of which $1,000 was to be paid in April 1st, 1849, the balance to remain a charge upon the land during the life of Mrs. Reed, widow, the interest to be paid annually, and at her death the principal sum to the three children. The reason for charging so large an amount in favor of the widow was because, in addition to her dower of one third as widow, she was entitled to a life interest in two fifths, being the shares of two minor sons, who had died in infancy, and instead of a life interest she was willing to accept the interest

on two fifths of the purchase money; and futher asking leave to amend the return as having sold the property to Jacob W. Seitzinger. The sale according to the amended return was confirmed. Seitzinger having died before deed made, it was executed to Richard Boone, his executor, and a mortgage delivered by the executor, 1st of April, 1851, conditioned for the payment of $1,500 to the three minors at the death of their mother, and the interest to her annually on said sum during her life.

This, then, was the adjustment by his executor of Seitzinger's account as administrator of Van Reed, as provided by the 5th clause of his will. His estate had upon it an annual charge equal to the interest on $390.92, or $23.45, and a like annual charge of interest on $1,500, or $90.00, in favor of Mrs. Reed, and liability to her children at her death for both principal sums. Both the farm and the five acres with the mansion upon it he devised in trust for his daughter, Mrs. Van Reed, afterwards Jones. Mrs. Reed, as already noticed, died September 8, 1891, leaving a will, of which she appointed James K. Getz executor, who made claim, as due his testatrix from her father's estate, for unpaid arrears of dower on the surplus from the sale of the farm, and arrears on the whole sum secured by the mortgage. The three surviving Van Reed children also computed their claims on the same basis. In the first adjudication on the evidence then produced before him the learned judge of the court below allowed these claims; but after exceptions and a rehearing and additional evidence, he found as facts that the whole amount remaining in the hands of the administrator of Jacob W. Seitzinger, immediately after filing his account in 1851, was, of the purchase money of the farm and mansion tract, $1,213.39, principal to secure annual interest to the widow, and shares of deceased sons, $685.67.

On the basis of this finding of fact he distributed the fund to the executor of Margaret A. Jones, formerly Van Reed, and to her three children.

Although somewhat conflicting, the evidence to warrant the finding as to the principal sum of the dower, and that Jacob J. S. Seitzinger, administrator, with the knowledge and consent of Mrs. Jones, had, prior to July 18, 1873, paid the whole $685.67 to her three children, was sufficient. The same may

be said of the finding of arrearages of interest unpaid to the widow on the $1,213.39 from April 1, 1864. The burden was on appellants to show payments, if any had been made after this date, and in this they failed to satisfy the auditing judge. We therefore treat his finding of fact as conclusive.

The allowance of interest upon the installments of dower as they fell due was proper; there was no evidence that the widow, by any declarations or conduct, waived her right to receive the installments when payable. As shown by the many authorities cited by the court below, he could, in view of the evidence, do nothing less than award this interest.

But it is argued that the fund in question is not subject to payment of a debt of this character, because the testator did not charge his real estate with payment of it, and after this lapse of time resort only can be had by the claimant to the land first charged. This point was not made in the court below, although earnestly pressed here. The fund for distribution was not raised from land owned by testator at date of his death. The will authorized the executors at their discretion to invest in and purchase lands; under this authority, they purchased lands in Schuylkill county; then, in conveyances joined by the legatees in 1873 they sold them for over $180,000. Of this money, the court set apart the sum of $25,000 for the benefit of Elizabeth during her life. While no one questions that debts generally, whether charged upon real estate by will, or liens thereon by operation of law, such liens are limited to five years; neither has it ever been questioned that a testator may create an express active trust of his estate, real or personal, which shall subject it to the claims of creditors beyond the statutory limitation; but what are the provisions of this will? It is conceded the fund for distribution is part of the residuary estate. The will says: "All the rest, residue and remainder of my estate, real and personal, including what may be purchased and acquired hereafter in my lifetime or after my death, by my executors . . . . I devise and bequeath to my executor or executors for the time being, his or their heirs, executors and administrators, in trust, by sales public or private, or mortgages thereof or from the rents, profits, interest and income thereof, while unsold, at his or their discretion, at such time and in such manner as he or they may deem necessary for the pay-

ment of all my debts and the discharge of all liens upon my real estate and the raising of any sum or sums of money that may be required for the payment of any legacies or for any purpose mentioned in this my will."

He then goes on to direct that until April 1, 1856, none of his legatees shall have a right to insist on the sale of his real estate for payment of debts, or for any other purpose, except at the discretion of the executors. Then follow these words : "If with a just regard to the rights of creditors (which are of course to be first regarded) my executors should in their judgment and discretion conceive it more advantageous to the probable ultimate interest of my family that my residuary real estate or any part thereof should remain unsold I recommend that there be no sale of the same." He then directs, that after the debts are all paid, the executors may convey what remains by allotments to the legatees.

There could not be by significant language a clearer devise to executors, their heirs, executors and administrators, in trust, to rent, sell or mortgage for the payment of debts and legacies. It is not a mere power to sell, which, unexecuted for five years, vests the estate in the heirs ; it is an active trust resting on a legal title, which vests the estate in the executors until the execution of the trust. This is the decision in the leading case on this question, Alexander v. McMurry, 8 W. 504 ; it is there held that in case of such express active trust the debts do not lose their right on the trust estate short of the period which would raise the presumption of payment. That decision has never been impaired ; on the contrary, it has been recognized and approved in many cases, of the later ones, Buffington v. Railroad Co., 74 Pa. 162, and Oliver's Appeal, 101 Pa. 303. That the application of the principle has been rigorously limited to those cases, where by the words of the will no title passes to the heirs until the full performance of the trust, in no way weakens the principle. While it was said in Bindley's Appeal, 69 Pa. 299 : " The leaning of this court through the whole current of the decisions upon this subject has evidently been to favor the heir, and to require of the creditor the vigilant prosecution of his claim," nevertheless, in Oliver's Appeal, 101 Pa. 303, cited by appellant, while deciding that that case was not within the rule, SHARSWOOD, J., says: " We certainly do not mean to

deny that a testator may create a trust of all or a part of his real estate for the payment of debts, and that as to the lands comprised in such trust, the debts would not lose their right of payment by the running of five years, or any other period than such as would raise the presumption of payment."

That the point now made is urged for the first time against this widow's claim is strong evidence that all the parties interested in this large estate considered the testator's will as establishing a trust for the payment of debts. The statutory limitation, if operative, would have barred it in 1855, yet payments were made down to 1864, and to her children as late as 1872. While this would not be conclusive of her right, it is conclusive as to what interpretation was put upon the will by all interested for a period of more than twenty years after its probate.

The other assignments of error have been passed upon by Illig and Brother's Appeal before mentioned. It is not necessary to again refer to them.

None of the assignments of error is sustained. The decree is affirmed, and the appeal dismissed at cost of appellants.