## Smith's Case.

Argued October 4, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*David Glick,* Deputy Attorney General, with him *Edward E. Petrillo,* Deputy Attorney General, and *Cyrus E. Woods,* Attorney General, for appellant.—Many cases in our courts of appeal have upheld the position of the Commonwealth in such a matter as is before the court at

this time, among which are the following: Arnold's Est., 253 Pa. 517; Hoffman's Case, 258 Pa. 343; Colucci's Est., 83 Pa. Superior Ct. 224.

*Henry A. .Jones,* for appellee.—The contract to furnish support for a fixed sum precludes the Commonwealth: Brose's Est., 155 Pa. 619; Phila. Trust Co. v. Northumberland Co. Traction Co., 258 Pa. 152; Klebe v. United States, 263 U. S. 188.

There was no proof that Percy C. Smith was an "indigent insane person."

The sworn statement attached to the Commonwealth's petition is not evidence of its claim in this case.

The Commonwealth's remedy, where there is a contract to furnish support at a fixed sum, is against the poor district: Rudolph's Case, 69 Pitts. L. J. 340, 341.

OPINION BY MR. JUSTICE SCHAFFER, January 6, 1930:

This appeal is by the Commonwealth, which filed its petition in the court below praying for a rule on the guardian of Percy C. Smith, a lunatic, to show cause why he should not pay the amount alleged to have been contributed by it toward his maintenance in the Allegheny County Hospital for the Insane from April 2, 1908, to June 1, 1927. The court, after hearing, discharged the rule, holding that, although the Commonwealth had made the payments claimed, Smith was not an indigent patient and that the remedy of the Commonwealth is against the Poor Board of Allegheny County.

At the time of his ward's admission to the hospital, the guardian orally contracted with the assistant physician thereof to pay three dollars a week for his maintenance. It is not claimed that the physician, in making this agreement, had any authority to act for the Commonwealth. This sum has been regularly paid to the hospital and has been kept by it. The lunatic was certified by the hospital authorities to the Common-

wealth as an indigent patient and the Commonwealth thereupon contributed to the hospital authorities one dollar and fifty cents per week for his maintenance, subsequently increased to two dollars, the aggregate of its expenditures being $1,969.36. It is admitted that the lunatic has an estate in excess of this sum. The position of the guardian, appellee, is that the lunatic was not in fact an indigent patient, and that he, the guardian, paid all for him that he was asked and agreed to pay. As we view the situation, it does not matter whether he was an indigent insane patient or not. It is true the Act of May 13, 1909, P. L. 535, provides, "any county......which now has......a suitable institution for the maintenance......of its indigent insane ......shall receive from the state treasurer the sum of two dollars per week for every indigent insane person of such county," but the Act of June 1, 1915, P. L. 661, section 1, provides, "Whenever any person is maintained as an inmate of any hospital, home, sanatorium or other institution of the Commonwealth, in whole or in part at the expense of the Commonwealth, the property or estate of such person shall be liable for such maintenance, to be paid or recovered as hereinafter provided." Nothing is said about indigence in this statute upon which liability to reimburse is raised nor is anything said about it in the Act of May 10, 1921, P. L. 438, section 4, which provides that, "The court of common pleas of the county of the residence of any inmate of any home, hospital, asylum or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, shall, upon the application of the attorney general, make an order, for the payment of maintenance to the Commonwealth, upon the trustee, committee, guardian, or other person who has charge of the estate of any such inmate." The Commonwealth's claim is not to be defeated merely because its money was contributed through a false or mistaken certification that the patient was indigent, if in fact he was not. The principle which underlies the

acts referred to is the one which supports liability at common law by the estate of a lunatic; that there is an obligation upon his part or upon his estate to reimburse all those who have supplied his necessities: Arnold's Est., 253 Pa. 517; In re Frank Hoffman, 258 Pa. 343. In Arnold's Estate, we said, page 521, "The money is paid, not for the support of the hospital but for the care and treatment of the individual patients" and "If an individual should pay the hospital for the maintenance of a patient, such individual would undoubtedly be entitled to reimbursement from the lunatic's estate." Under these principles, if as a matter of fact the Commonwealth did contribute toward the lunatic's maintenance, it is entitled to be reimbursed.

The record before us, however, is in very unsatisfactory shape to determine the question as to how much of the Commonwealth's contributions went for the maintenance of the lunatic and how much, if any, was used by the institution for other purposes. It appears that for the year 1907, the one before he was admitted to the hospital, the average daily cost of maintenance of patients per capita was $2,837, and it is assumed by the appellee that this amount covers the cost of maintenance in all subsequent years. There is nothing in the record to warrant this assumption and we think the case not in proper shape for disposition by us or by the court below until the average cost of the maintenance of patients for all the years during which the lunatic has been a patient in the hospital is shown. If it should appear that the three dollars per week paid by the guardian covers the entire cost of his maintenance during all of this time, then manifestly the Commonwealth has contributed nothing, but if on the other hand, it appears that the cost was in excess of the amount paid by the guardian, in that event the Commonwealth would be entitled to recover from the lunatic's estate whatever sum it has contributed necessary to his maintenance in addition to that paid by the guardian. If no part of the State's

contribution was used for the support of the lunatic it is not entitled to anything; if the whole or only part of it was so used, the State may recover from the poor board the whole sum, or that part actually used for his maintenance. The officers of county hospitals which care for the insane cannot impose on the Commonwealth by making false statements in connection with persons who may be patients therein, and by such false statements unlawfully secure from the State its moneys.

Our conclusion necessitates further proceedings in the court below before a final determination shall be reached.

The order of the court below is reversed, the rule granted is reinstated, with directions to the court to determine the amount, if any, due to the Commonwealth in accordance with the views herein expressed.