## Landis' Estate

*John S. Rhoda* and *Dawson H. Muth*, for guardian ad litem.

*Richard T. Williamson* and *John A. Moss*, for exceptants.

SHANAMAN, J., March 19, 1947.—On October 11, 1935, the late H. V. Landis was appointed by this court to act as guardian for his son, Spencer M. Landis, an incompetent. Mr. Landis proceeded to serve in said capacity until the time of his death on June 10, 1945. On June 29, 1945, the Berks County Trust Company was appointed substituted and successor guardian for Spencer M. Landis. On August 25, 1945, Lillian M. Landis and Berks County Trust Company, executors

of H. V. Landis, deceased, filed their first and final account covering the said guardianship, which was confirmed nisi eo die. On September 19, 1945, Lillian M. Landis and Berks County Trust Company, executors of H. V. Landis, deceased, filed exceptions to their aforesaid first and final account in the guardianship, excepting to the failure of the accountants to pay back "advancements" aggregating $5,000, made by H. V. Landis personally into the guardianship from November 29, 1938, to December 1, 1944, for the care and maintenance of his said son. On August 5, 1946, Jonathan P. Batdorf, Esq., was appointed guardian ad litem by this court to represent the said Spencer M. Landis, an incompetent, in place of Berks County Trust Company, successor guardian. On August 28, 1946, the said Jonathan P. Batdorf, guardian ad litem, filed exceptions to the aforesaid account, excepting to the inclusion therein of the aforesaid "advancements" totaling $5,000 in the debit portion of personalty income account. On January 20, 1947, a stipulation was filed by the opposing parties wherein they agreed that neither party should be bound by decedent's use of the word "advancements" in the entries in his guardianship books, and that the aforesaid payments should be taken to have been actually made by the said H. V. Landis during his lifetime. Testimony was taken before Shanaman, J., and the matter has been argued on the pleadings and testimony before the full bench.

The common law placed an obligation upon a lunatic or his estate to reimburse those who supplied his necessities: Smith's Case, 298 Pa. 358, 361, 362. Such common-law liability was also declared in section 1 of the Act of June 1, 1915, P. L. 661, 71 PS §1781, as amended by the Acts of May 10, 1921, P. L. 438, and April 25, 1929, P. L. 704. Section 1 declares the liability of the property or estate of the incompetent. Section 3 additionally imposes liability upon the husband, wife, parent or child of the incompetent.

"In declaring the common law liability of the lunatic in section 1, and in imposing a new liability on others for the same debt in section 3, the legislative intention was to provide an additional source of payment in the nature of a suretyship, but was not intended to release the lunatic from the primary obligation always resting on him": Boles's Estate, 316 Pa. 179, 182.

Counsel for the executors of the estate of H. V. Landis, deceased, rely upon the cited decision in Boles' Estate. There a claim of the Commonwealth of Pennsylvania and another of the City of Philadelphia, both for maintenance of John P. Boles, Jr., at the Philadelphia Hospital for Mental Diseases, were presented at the audit of an account of the estate of John P. Boles, deceased, the father of John P. Boles, Jr. The claims were allowed as debts due from the father's estate. The question was whether the distributive share of the son in that estate should be mulcted in order to make reimbursement to decedent father's estate for the amount of the bills. The court held that reimbursement was proper. It may be conceded that if the present facts were the same, that is to say, if the estate of H. V. Landis were now charged for an unpaid account for the support of Spencer M. Landis, a similar reimbursement might be proper. Nor does the mere circumstance that claimant for reimbursement has actually paid before his death for the support of the incompetent, prevent his personal representatives from obtaining such reimbursement for his estate. It would appear that they are in no worse position than if they were compelled by the law to settle an unpaid account for such support, as occurred in the Boles' Estate proceedings. The crucial difficulty in the present claim for reimbursement arises from the testimony that H. V. Landis did not in his lifetime treat his advances as recoverable from his son or his son's estate.

While the words "amount advanced by H. V. Landis", "money advanced by H. V. Landis" and "ad-

vanced by H. V. L." were employed by Mr. Landis' secretaries in keeping the account for Mr. Landis, as guardian for his son, and while the said entries were made by them "at the direction of Mr. Landis", the parties have stipulated that no intendment for or against either party shall be taken from that fact. Jonathan P. Batdorf, guardian ad litem for Spencer M. Landis, and a highly respected member of the bar, testified that he represented the estate of Ada Mohn Landis, who was decedent's first wife and the mother of Spencer M. Landis; that Mr. Landis decided to take his son from the Wernersville State Hospital and place him in a much more expensive hospital near Philadelphia; that the son's income was insufficient to meet the expense, and that the witness suggested that Mr. Landis go into court and possibly obtain more money, or that Mr. Landis would have to meet the expense personally; that Mr. Landis said he as father would take care of his son and had plenty of money to do it; that witness told him that he would probably never be repaid from any source, and that Mr. Landis replied that he was the father and he would pay it himself; that Mr. Landis repeated such statements afterwards upon a number of occasions, and continued to make heavy payments for the support of his son at the expensive private institution after he, the father, knew that his son was incurable. Mr. Manwiller, trust officer of Reading Trust Company, testified to the same effect, and in addition said he told Mr. Landis that the trustee would have to resist an application to the court to expend principal, because the private institution was so expensive, whereupon Mr. Landis said he would pay it out of his own pocket. Mr. Rhoda, likewise a highly respected lawyer, who had represented decedent in his capacity as guardian, testified that he advised Mr. Landis repeatedly to apply to the court for an order to pay support out of principal, and that Mr.

Landis replied he was using his own money; that he could keep his son the way he wanted to, and that he did not expect to be reimbursed.

It appears to us from the evidence that Mr. Landis, being in a financial position to give his son expensive maintenance and care at a cost about eight times as great as that at the public institution in which he was a patient, chose to remove him to the more expensive institution. We think that Mr. Landis contributed the $5,000 without expectation of reimbursement and with the spirit and the intent of a beneficent donor. If he had intended otherwise, he might have tried an application to the court for an order to consume principal, or he might have in his last will charged his sons distributive share with the advancements. It is not shown to us by any evidence in the record that he adopted either course, and although the record is silent, we may fairly assume that if he had by any conduct shown an intent to charge his advancements, such evidence would have been presented. Since the guardian was the father of the ward, the supposition that his advances were intended to be gratuities is more plausible than if he were a stranger to the ward. We are of the opinion that the evidence exhibits the donative intent of Mr. Landis with sufficient clarity to take the case out of the operation of the general rule. The account shows a principal balance in the estate of $462.94. In addition it shows two assets not comprised in the $462.94. These two items consist of cash surrender values in two policies of the Northwestern Mutual Life Insurance Company. The policies are stated to be subject to existing policy loans. The account gives sufficient particulars on this head to support the tentative conclusion that a net cash surrender value of well over $1,000 existed on August 19, 1945, and presumably exists today. The account also shows an income balance of $245.49, and lists $450 of

unpaid claims. The accountant takes no credit for any compensation due the guardian. Under these circumstances a further inquiry becomes necessary to determine whether justice does not demand at least a partial reimbursement to the estate of decedent, so far as the estate contains any assets from which such reimbursement can be made. After careful consideration, we are of opinion that decedent did not look for any reimbursement even to that limited extent. While it is not to be presumed that Mr. Landis intended to enlarge his son's estate, he did, in our opinion, intend to maintain it substantially intact. In Cadden v. Equitable Life Assurance Society, 31 York 10, 18 Lack. Jur. 102, it was held that a guardian was authorized by virtue of his office and without order of court to accept a cash surrender value and give his receipt binding his ward, and that it was his duty to elect whatever course appeared most beneficial to the ward: Accord, Maclay v. Equitable Life Assurance Society, 152 U. S. 499. Nevertheless, Mr. Landis, as far as the record reveals, sought at no time either with or without leave of court, to liquidate the cash surrender values or to consume even a portion of the principal assets listed in the account. Whether, because of the thoughtfulness for possible dependents of his son, or because of a realization that in the event of his own death, the undiminished assets of his son's estate would be totally required for the proper maintenance of his son and for his son's funeral expenses, Mr. Landis appears to have acted throughout as a benevolent father without thought of compensation or reimbursement. The exceptions of Lillian M. Landis and Berks County Trust Company, executors of H. V. Landis, deceased, must therefore be dismissed.

The exceptions of Jonathan P. Batdorf, guardian ad litem, to the inclusion in the account filed of debits against the guardian for amounts of the advances, totaling $5,000, must likewise be dismissed, for the

reason that the parties have stipulated that the said moneys were paid by Mr. Landis "into the guardianship". The accountants rightly charged themselves with the moneys received by the guardian from himself in a personal capacity.

In accordance with our dismissal of the exceptions of Lillian M. Landis and Berks County Trust Company, executors of H. V. Landis, deceased, the fund in question will be distributed to Berks County Trust Company, succeeding guardian for Spencer M. Landis, without diminution for reimbursement for advancements of Mr. Landis during his lifetime to the fund. Before such distribution can be decreed it will be necessary to hold a hearing at which any unpaid claims against the fund, including any for counsel fees, for the preparation of the account, and for compensation of Mr. Batdorf, guardian ad litem, may be presented.

And now, to wit, March 19, 1947, all the exceptions filed by either party are dismissed, and the case is set down for further hearing. Notice hereof shall be given by the prothonotary to all the parties interested.