## Shaffer Estate

*Millard A. Ullman,* for petitioner.
*Edwin D. Strite,* for Commonwealth.

WINGERD, P. J., June 24, 1949.—Alice Elizabeth Shaffer, a person of weak mind, who is an inmate of the Harrisburg State Hospital, and Ivan Grover Shaffer, her husband, were the owners, as tenants by the entireties, of a certain dwelling house in Mont Alto, Franklin County, Pa. The First National Bank and Trust Company in Waynesboro, Pa., guardian of the weak-minded person, presented its petition to the court, which petition was joined in by the husband, Ivan Grover Shaffer, for an order to join in the sale of the above-mentioned real estate. Pursuant to order of the court, such real estate was sold at public sale for the sum of $6,250. The proceeds, after deduction of expenses, etc., were divided equally between the husband and the guardian of the wife. Later a petition was presented by the guardian of the wife, in which Ivan Grover Shaffer joined, setting forth that there was due to the Harrisburg State Hospital the amount of

$1,178.39 for maintenance of the wife; that the guardian had in its hands cash of $2,534.03; and that the husband had no present financial ability to pay for the maintenance costs for his wife but had provided for the payment of one half of the bill of $1,178.39, and praying the court to authorize the guardian to pay from the principal and income in its hands the sum of $589.19, one half of the bill, as well as the costs incurred in presenting the petition.

The court issued a rule on the Commonwealth of Pennsylvania to show cause why the order prayed for should not be made. The Commonwealth of Pennsylvania filed an answer admitting a number of the allegations in the petition and replying to others by stating that it had no information, etc., concerning them and demanding proof. The guardian presented its petition for an order authorizing the taking of testimony and pursuant thereto testimony was taken. At the hearing the husband was present in person, the guardian appeared by its assistant trust officer and its attorney and the Commonwealth of Pennsylvania, Department of Revenue, was represented by its attorney. On the day of the hearing the Commonwealth filed an amended answer, in which it alleged that it was advised that the husband's share of the proceeds of the sale of the property was in the possession of the trust department of the guardian; that the husband was primarily liable for the wife's support; that the bill of the Commonwealth of Pennsylvania was now $1,534.06, as an additional $355.67 had accrued between July 1, 1948, through February 28, 1949, the bill of $1,178.39 being the balance due to June 30, 1948, and praying that the court order the husband to pay, from his share of the proceeds of the sale of the real estate, the total amount of $1,534.06.

At the hearing it developed that the husband received all of his portion of the proceeds of the sale of

the real estate, except $1,178.39, which was left on deposit with the guardian and is held in its trust department in an account headed "Alice Elizabeth Shaffer and Agent for Ivan Grover Shaffer", without any accompanying signature cards. The assistant trust officer stated that it would have to be accounted for by the trust company. It also developed that the husband had obtained a decree of divorce in Nevada after the sale of the real estate, such decree being dated October 22, 1948, and that in such decree the court stated that it reserved jurisdiction to provide for the proper care and maintenance of the wife at the Harrisburg State Hospital, or at any other institution or hospital where she may be confined or treated, but no order was made at that time as the court found that a trust fund existed sufficient to maintain the wife for approximately five years. It also appeared that the husband was married to a widow with two children, who had a home and some income, and that he had his own two children in his custody. There was evidence that the husband had consumed the portion of his share of the proceeds of the real estate, over and above the $1,178.39 left with the guardian, in paying expenses in connection with the divorce proceeding in Nevada and in paying certain indebtedness of his. There is no contention concerning these matters and the court finds them as facts, except that this court does not pass upon the validity or invalidity of the divorce obtained in Nevada, a certified copy of such decree having been admitted only for the restricted purpose "to show the state of the proceeding and not in any way to determine the liability or nonliability of Ivan Shaffer for maintenance of his wife".

The question raised by the respective parties and the only issue raised by the answer and amended answer is whether or not the husband's share of the

proceeds of the real estate in the hands of the First National Bank and Trust Company in Waynesboro, Pa., should be held responsible for the whole bill of the Commonwealth. The guardian takes the unusual position that one half of the bill of $1,178.39 should be paid by it and one half by the husband, and the Commonwealth contends that the whole amount of $1,178.-39 and the additional $355.67, which had accrued since such bill, should be paid by the husband from his share of the proceeds of the sale of the real estate.

As this matter comes before the court on a rule which was to show cause why the guardian of the person of weak mind should not be authorized to pay one half of the bill of $1,178.39, that is really the only question before the court, but as the evidence shows that certain money was deposited with the trust company, which is guardian of the person of weak mind, in such a way that it can be applied by such trust company to the payment of the bill in question, the court feels that it is proper to prevent delay and further proceedings to decide what shall be done with the monies so deposited.

The Act of June 1, 1915, P. L. 661, sec. 1, 71 PS §1781 provides as follows:

"Whenever any person is maintained as an inmate of any hospital, home, sanatorium, or other institution of the Commonwealth, in whole or in part at the expense of the Commonwealth, the property or estate of such person shall be liable for such maintenance, to be paid or recovered as hereinafter provided"; and in section 3 thereof, as amended:

"The husband, wife, father, mother, child, or children of any person who is an inmate of any asylum, hospital, home, or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so to do, shall be liable to pay for the maintenance of any such person, as

hereinafter provided. Whenever either of the owners of any property held by entireties shall be maintained in any institution as aforesaid, and the separate property of such inmate shall not be sufficient to reimburse the Commonwealth, such property held by entireties shall be liable for the same to the extent of any order that any court of record of this Commonwealth may make against the spouse of such inmate, either during the lifetime of such inmate or after his or her death. The liability for the support of such inmate is hereby declared to be the joint liability of such owners to the extent of such order and enforcement against their joint as well as their several properties"; and in section 4 thereof, as amended:

"The court of common pleas of the county of the residence of any inmate of a State-owned mental hospital, or any home, hospital, asylum, or other institution wherein said inmate is maintained in part by the Commonwealth of Pennsylvania, shall, upon the application of the Department of Justice, acting on behalf of the Department of Revenue, make an order for the payment of maintenance to the Commonwealth, upon the trustee, committee, guardian, or other person who has charge of the estate of any such inmate, or against the husband, wife, father, mother, child, or children of any person so maintained; and any order made against the husband, wife, father, mother, child, or children shall be in such amount as the court, in its discretion, deems proper, taking into consideration their ability to pay for said maintenance; and said court may also, upon like application, direct any trustee, committee, guardian, or other person having charge of any such estate, to file with the Department of Revenue the statement required by the second section of this act."

At common law, the estate and property of a weak-minded person or other incompetent was liable for

the expenses of his or her maintenance: Smith's Estate, 298 Pa. 358, 362; In re Frank Hoffman, 258 Pa. 343. The obligation declared by section 1 is the same as at common law but section 3 imposes a new liability on others for the same debt. In Boles' Estate, 316 Pa. 179, 182, it is said:

"In declaring the common law liability of the lunatic in section 1, and in imposing a new liability on others for the same debt in section 3, the legislative intention was to provide an additional source of payment in the nature of a suretyship, but was not intended to release the lunatic from the primary obligation always resting on him."

Section 3 further provides, as amended by the Act of May 10, 1921, P. L. 438, sec. 2, 71 PS §1783, above quoted, that in the event an owner of property, held by the entireties, is maintained in any institution and the separate property of such inmate shall not be sufficient to reimburse the Commonwealth, then the property held by the entireties shall be liable for the same to the extent of any order that any court of record of this Commonwealth may make against the spouse of the inmate, either during the lifetime of the inmate or after his or her death, and the liability for the support of said inmate is hereby declared to be a joint liability of such owners. The effect of this provision was to make property held by the entireties liable for support when either of the owners was an inmate and his or her separate property was not sufficient to reimburse the Commonwealth. It does not seem that this provision concerning property held by the entireties is applicable in any way to the present case for the property has been sold and the proceeds divided so that one half has become the several property of each of the owners.

A husband is certainly primarily responsible for the support of his wife and we can see nothing in the

act which changes that responsibility as between the husband and the wife. The fourth section gives to the Commonwealth the right to proceed against the inmate's estate in the first instance, if it so desires, and under section 503 of The Mental Health Act of July 11, 1923, P. L. 998, 50 PS §143, primary liability to the Commonwealth seems to be placed on the estate of the inmate. However, as we have stated, all of this has nothing to do with the liability of a husband for his wife's support so far as his wife or his wife's estate are concerned: In re Hannon, 52 D. & C. 160. In fact, as a wife, who is sui juris, could compel a husband to reimburse her for expenditures made from her own estate for her maintenance (Clark v. Clark, 17 D. & C. 500), there is no reason why the guardian of a wife, who is a person of weak mind and an inmate of a State institution, cannot compel a husband to reimburse the estate of the wife in its hands when it has been compelled by the Commonwealth to pay for the wife's maintenance in the State institution, or bring proceedings on behalf of its ward against the husband for support: In re Hannon, 52 D. & C. 160.

In the instant case, to order the guardian to pay for its ward's support and then seek reimbursement from the ward's husband would mean merely delay and circumlocution. The First National Bank and Trust Company in Waynesboro, Pa., has in its trust department and under its control $1,178.39 belonging to the husband, which appears to have been placed by him in its control to provide a fund to pay the maintenance of the inmate accrued to June 30, 1948, if it became necessary for him to do so. We can consider the amended answer of the Commonwealth, on behalf of the Department of Revenue, as a proper application under section 4 of the Act of June 1, 1915, P. L. 661, supra, and under that section, on such application,

this court has the power to order payment of the wife's maintenance to June 30, 1948, by her then husband. This payment can be made by means of the moneys deposited with the First National Bank and Trust Company in Waynesboro, Pa., in the manner above stated. The payment of maintenance accrued in excess of the amount of the moneys deposited, as above set forth, and of future maintenance of the inmate is a matter which must be determined in future proceedings. The amended answer in the instant proceedings, even though it is considered as an application made in behalf of the Department of Revenue, refers only to moneys deposited with the trust company above mentioned, which were derived from the sale of the property held by the husband and wife as tenants by the entireties, and cannot be considered a general application for an order for maintenance of the inmate involved.

We have used the terms "husband" and "wife" in this opinion merely to designate the parties as they were when the claim of the Commonwealth for maintenance of the wife to June 30, 1948, became due and not with any intention to either directly or indirectly adjudicate their present status.

Now, June 24, 1949, rule discharged and it is ordered that the claim of the Commonwealth of Pennsylvania for maintenance of Alice Elizabeth Shaffer, a person of weak mind in the Harrisburg State Hospital, accrued to and due on June 30, 1948, in the amount of $1,178.39, shall be paid by Ivan Grover Shaffer by means of the moneys deposited by him in that amount in the trust department of the First National Bank and Trust Company in Waynesboro, Pa., in an account designated "Alice Elizabeth Shaffer and Agent for Ivan Grover Shaffer". Costs of this proceeding are to be paid by Ivan Grover Shaffer.