## Szakovics Estate

*J. Lawrence Davis* and *James R. Charron*, for Commonwealth.

*John M. Dervin*, chief attorney, and *Emanuel E. Farbman*, assistant chief attorney, for Veterans Administration.

BARTHOLD, P. J., March 22, 1954.—This is a petition filed by the Department of Revenue of the Commonwealth of Pennsylvania for an order directing the guardian of the estate of Andrew M. Szakovics, an incompetent veteran, to reimburse the Commonwealth for the cost of the care and maintenance of the incompetent at the Allentown State Hospital.

The facts are uncontroverted and may be summarized as follows:

Andrew M. Szakovics is a United States veteran of World War II and is presently 27 years of age, having been born on September 26, 1926. After his honorable discharge from the service he became mentally incompetent and was admitted to the Allentown State Hospital on September 24, 1949. Thereafter he was awarded a veteran's pension of $63 a month for permanent total nonservice-connected disability effective February 7, 1950. In view of the fact that the veteran was considered incompetent and no guardian had been appointed at that time, an award of $30 a month was made to the Superintendent of the Allentown State Hospital for the benefit of the veteran, and the difference between $30 and $63 a month, or

$33, was placed to the credit of the veteran in a fund maintained by the Veterans Administration known as "Personal Funds of Patients".

On May 4, 1953, on petition of the Commonwealth of Pennsylvania, this court declared the veteran unable to take care of his property owing to weakness of mind and appointed the Lafayette Trust Company as guardian of his estate. On August 13, 1953, a check for $2,157, representing the accumulation of pension moneys due the veteran, was released to the guardian by the Veterans Administration. The Commonwealth of Pennsylvania then filed a petition requesting the court to make an order on the guardian "in such amount as in the discretion of your honorable court seems proper for the repayment to the Commonwealth of Pennsylvania of the sums expended for the care, maintenance and support of Andrew M. Szakovics, during the period from September 24, 1949, to May 4, 1953, and for the current care, maintenance and support of the said Andrew M. Szakovics from May 4, 1953, to the present time and for such future care, maintenance and support as the said Andrew M. Szakovics might require."

The Veterans Administration filed an answer averring that the uninvested fund in the custody of the guardian is exempt from the claims of creditors by act of Congress, since it was derived from veterans' benefits paid by the United States Veterans Administration.

Counsel for the veterans bureau and counsel for the Commonwealth respectively concede the obligation of the guardian to pay for the ward's maintenance after the date of the appointment of the guardian, but they disagree as to the obligation of the guardian to pay for the ward's maintenance prior thereto.

Manifestly, when the Lafayette Trust Company was appointed guardian it became the guardian's duty

to care for the necessities of the ward. The appointed guardian of a weak-minded person is given the same powers and duties as a committee in lunacy. The committee or guardian is a mere bailiff of the court, and the weak-minded person is in effect the ward of the court and his estate is in custodia legis: Barclay-Westmoreland Trust Company v. Dollar Savings Bank et al., 338 Pa. 421; In re Pritchard Case, 359 Pa. 315; Harvey Appeal, 170 Pa. Superior Ct. 289; In re Gerlach's Estate, 127 Pa. Superior Ct. 293.

Counsel, accordingly, have agreed that the only question involved is whether the uninvested fund in the hands of the guardian, representing pension payments based on the incompetent's war service, is exempt by act of Congress from the Commonwealth's claim for reimbursement of the cost of the maintenance of the incompetent at the Allentown State Hospital from September 24, 1949, to May 4, 1953, a period prior to the appointment of the guardian.

The Veterans Administration contends that the Commonwealth is a creditor and as such is prohibited by act of Congress from recovering on the claim in question. The act of Congress provides:

"Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. Such provisions shall not attach to claims of the United States arising under such laws nor shall the exemption herein contained as to taxation extend to any property purchased in part or wholly out of such payments. . . .": Act of August 12, 1935, c. 510, sec. 3, 49 Stat. at L. 609; October 17, 1940, c. 893, sec. 5, 54 Stat. at L. 1195, 38 U. S. C. §454(a). It is

important to note that the provisions of this section of the act govern balances withheld by the veterans' administrator and subsequently paid to a guardian: Act of Congress, amendment, July 13, 1943, c. 233, §2, 57 Stat. at L. 554, 38 U. S. C. §450.

The Commonwealth contends that it is not a creditor within the meaning of the above act of Congress and is entitled to reimbursement under Pennsylvania statutory authority.

It is uncontroverted that the fund is presently held by the guardian in a bank account, that it is uninvested and was derived solely from the United States Government. The fund is therefore impressed with the conditions annexed to it by the act of Congress. It is a well established legal principle that the United States as the donor of pensions and veterans' benefits may by Federal enactment annex to the donation such conditions as it sees fit. The Supreme Court of Pennsylvania, Moschzisker, C. J., has declared that:

"The proceeds of war risk insurance are a definite kind of property, differing from the ordinary property of a soldier's estate, and are in the nature of a beneficence or gratuity, bounty or pension, . . . a part of (the federal government's) war policy. . . . This distinct class of property, by federal enactment, is not subject to the claim of creditors or taxation, and is solely for the benefit of the soldier, his dependents and next-of-kin": Wanzel's Estate, 295 Pa. 419, 424.

The Supreme Court of Pennsylvania, Kephart, C. J., has also declared that:

"The fund arising from war risk insurance is an earmarked fund that has impressed on it the quality given to it by the United States Government—the quality of a national donation, bounty, or gift for services in defense of the nation. The fund may be traced through the various agencies until it reaches its final destination in consummation of the original

purpose for its creation. The badge of national obligation to a soldier protects it from liability for taxes, debts and the like; . . . . Congress was not interested in setting up a fund for creditors and excisors": Fisher's Estate, 302 Pa. 516, 523. See also Schmuckli's Estate, 341 Pa. 36, 41, 42; Holmes v. Tallada, 125 Pa. 133, 136 ·(Paxson, C. J.).

In light of these decisions and the specific provisions of the act of Congress of 1935, supra, it is clear that the instant fund, uninvested in the hands of the guardian, is a distinct class of property, impressed by the Federal Government with an· exempt status as to liability for taxes and claims· of creditors.

We come then to the final point for decision. Is the Commonwealth of Pennsylvania a creditor within the purview of the act of Congress?

The Federal Act is clear and free from all ambiguity, hence the letter of it is not to be disregarded under the pretext of pursuing its spirit: Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, 46 PS §551; Lawrence Township School District Tax Case, 362 Pa. 377; Pennsylvania Liquor Control Board v. Publicker Commercial Alcohol Company, 347 Pa. 555; Midvale Company v. Unemployment Compensation Board of Review, 165 Pa. Superior Ct. 359. Words having a precise and well-established legal meaning must be given that meaning when they appear in statutes, unless there is clear expression of legislative intent to the contrary: Commonwealth v. Hicks, 365 Pa. 153; Ryder Appeal, 365 Pa. 149; Subers Liquor License Case, 173 Pa. Superior Ct. 558.

The word "creditor" has a precise and well-established legal meaning. It is defined in Bouvier's Law Dictionary in these terms:

"He who has a right to require the fulfillment of an obligation or contract . ·. . a person to whom any obligation is due."

We can find no clear expression of legislative intent that the word "creditor" should be given a meaning different from its well settled legal meaning. The act does not differentiate between creditors. It excludes all creditors from making claims against veterans' pension or benefits derived from the United States Government. The only claims excepted from the operation of its provisions are certain specified claims of the United States. Exceptions thus expressed in law must be construed to exclude all others: Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 54, 46 PS §554; In re Oliver's Appeal, 101 Pa. 299, 303. Noteworthy also is the fact that the act exempts veterans' benefits from taxation. This provision is an indication that local and State governments were in contemplation as possible claimants.

The Pennsylvania Legislature has designated the Commonwealth a creditor. It has enacted legislation designating the Commonwealth a claimant against the estates of insane and weak-minded persons for moneys expended by it. The Act of June 1, 1915, P. L. 661, sec. 1, 71 PS §1781, provides:

"Whenever any person is maintained as an inmate of any hospital, . . . or other institution of the Commonwealth, in whole or in part at the expense of the Commonwealth, the property or estate of such person shall be liable for such maintenance, . . .

Section 6, 71 PS §1786, provides:

"All claims by the Commonwealth for maintenance, . . . in the distribution of any of the estate of any person so maintained, shall take precedence and be paid after other claims which by law are now given precedence, and before any claims of general creditors:"

"The principle which underlies the acts referred to is the one which supports liability at common law by the estate of a lunatic; that there is an obligation upon

his part or upon his estate to reimburse all those who have supplied his necessities": Smith's Case, 298 Pa. 358, 361; Reiver's Estate, 343 Pa. 137, 139; Yoder's Estate, 341 Pa. 81; Arnold's Estate, 253 Pa. 517, 520.

"Whether the obligation be regarded as contractual or quasi-contractual, it was nevertheless inherent in the acceptance of state aid": Waits' Estate, 336 Pa. 151, 157. "Valid claims for support are debts of a decedent": Stoner Estate, 358 Pa. 252, 256.

Under the foregoing Pennsylvania statutes and appellate court decisions, it is perfectly clear to us that the Commonwealth has the status of a creditor when it seeks to use veterans' benefits for the satisfaction of a claim arising prior to the appointment of a guardian. To say that the question involved is reimbursement rather than the assertion of a creditor's claim is no adequate answer to the obvious and statutorily declared debtor-creditor relationship existing between the Commonwealth and the incompetent.

The precise question as to whether the Commonwealth is a creditor, excluded by the act of Congress from claiming reimbursement for maintenance expenses arising prior to the appointment of a guardian, has not been decided in our appellate courts and conflicting opinions on this question have been rendered in the lower Courts of the Commonwealth. In support of our view we cite: In re Christian S. Bones, Incompetent, 34 Dauph. 385 (Hargest, P. J.); Brusbard's Estate, 34 D. & C. 107 (C. P. No. 1, Phila. County, Kun, J.); In re Estate of Virginia Bell Starr, August term, 1951, no. 46, Orphans' Court, Washington County (Anderson, P. J.). Cf. Estate of Nicholas Apoltolico, 35 Lack. 129; In re Musser, 19 D. & C. 526 (claims by father of incompetent veteran for cost of maintenance prior to guardian's appointment). Contra: Lulis Estate (No. 1), 77 D. & C. 118 (C. P. Luzerne County; Valentine, P. J.).

It is our considered judgment that the evident purpose of Congress was to exempt veterans' pensions or benefits from the claims of creditors including claims of local and State governments. When the Congress used the word "creditors" it did not choose to define the word or exclude local government agencies. We are not at liberty to defeat the purpose of the legislation by adding to the statute words which the Congress did not see fit to include. We may not speculate on what the legislative intention was when the words of a law are clear and free from ambiguity.

While it is to be regretted that the Commonwealth, on the facts presented by this record, cannot recover its claim for the cost of maintaining the incompetent veteran prior to the date of the appointment of a guardian, this unfortunate result has occurred through the inaction of the Commonwealth. The Commonwealth had full knowledge that the incompetent veteran was entitled to veterans' benefits when the first payment was made by the Veterans Administration to the Allentown State Hospital in February 1950. The Commonwealth did not then see fit to apply for the appointment of a guardian and waited until May 1953 to do so. The Commonwealth's position now is no different from that of any other creditor and as such it cannot recover for expenditures made prior to the appointment of the guardian by virtue of the provisions of the act of Congress of 1935.

## Order

And now, March 22, 1954, the petition of the Commonwealth of Pennsylvania for an order directing the Lafayette Trust Company, guardian of the estate of Andrew M. Szakovics, an incompetent veteran, to reimburse the Commonwealth in the sum of $1,418.87 for the cost of the care and maintenance of Andrew M. Szakovics at the Allentown State Hospital, for the period September 24, 1949, to May 4, 1953, is refused.