Opinion by
 

 Cunningham, J.,
 

 This is an appeal from the refusal of the Court of Common Pleas of Lackawanna County to strike off a judgment entered therein against the appellant, Lina Bianco, individually, upon a transcript of certain proceedings in the orphans’ court of that county. The authority relied upon for filing the transcript, and entering the judgment, in the court below is Section 51(a) of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS §870, which reads:
 

 “It shall be the duty of the prothonotariesi of the courts of common pleas to file and docket, whenever the same shall be furnished by any parties interested, certified transcripts or extracts from the record showing the amount appearing to be due¡ from or in the hands of any fiduciary, on the settlement of his accounts in the orphans’ court of the same or any other county, or by virtue of a decree of said court; which transcripts or extracts, so filed, shall constitute judgments, which shall be liens against the real estate of such fiduciary from the time of such entry until payment, distribution or satisfaction.”
 

 Lina Bianco (formerly Oatanzaritti) is the executrix of the will of her former husband, Frank Oatanzaritti, who died July 10, 1930, having devised his entire estate to her.
 

 
 *210
 
 At the time of his death Frank Catanzaritti was, and for seven years prior thereto had been, the guardian of the estate of his minor nephew, Joseph Catanzaritti, by appointment of the Orphans’ Court of Lackawanna County, at No. 543 of 1923, and also of the estate of his minor niece, Marie Catanzaritti, at No. 544 of 1923. Their estates consisted solely of the regularly accruing payments of compensation awarded for the accidental death of their father, Pasquale Catanzaritti, who was survived by a widow, Vincenta, and the two above named children. Through re-marriage the name of the mother of the minors became Vincenta Polito and the proceedings with which we are now concerned were instituted by her in 1935 as the mother and next friend of the minors; we shall, therefore, refer to her as the appellee. Separate proceedings were conducted in the respective minors’ estates in the orphans’ court, separate judgments were entered in the common pleas and an appeal from each taken to this court. The above entitled appeal is from the judgment upon the transcript in the estate of Marie Catanzaritti. As the questions involved under the appeal in the estate of Joseph Catanzaritti are the same and only the same as those involved in the present appeal, counsel have stipulated that the same judgment be entered in the appeal in the Estate of Joseph Catanzaritti at No. 59 of this court (being the appeal from No. 411 September Term, 1937 of the court below) as is entered herein.
 

 Frank Catanzaritti never filed any account of his guardianship of the estate of his ward, Marie Catanzaritti; nor did appellant, as his personal representative, state one for him until more than five years had elapsed after his death.
 

 On July 24, 1935, Vincenta Polito, the appellee, acting for her minor daughter, Marie, obtained from the orphans’ court a citation directed to appellant and requiring her to show cause why she should not file an ac
 
 *211
 
 count of the guardianship of her testator, Frank Catanzaritti. Appellant filed an answer in which she stated. “That no funds whatsoever have come into her hands as executrix of the estate of said Frank Catanzaritti, deceased guardian,” and that it was necessary to borrow money to pay his funeral expenses. Following a hearing upon the citation and answer appellant on November 7, 1935, filed an account on behalf of her testator of his administration of the estate of Marie Catanzaritti at No. 544 of 1923 of the orphans’ court. The first item of the account reads:
 

 “The Accountant charges the guardian with the receipt of the following moneys:
 

 Compensation paid by Hudson Coal Company, commencing May 1, 1923 to October 24, 1931 .. $1103.69.”
 

 On behalf of the guardian the accountant then claimed four items of credit: (1) For maintenance and support of the minor from May 1, 1923 to October 1, 1929 at the rate of $15 per month — $1,140; (2) For payment to the minor’s mother for the period commencing October 1, 1928 to October 1, 1929 for the support of the minor — $360; (3) Commission due guardian— $55.18; (4) Cost of filing account and audit — $23.50; making total credits of $1,578.68 and showing a balance due to the guardian of $474.99. Exceptions to this account were filed by the appellee in which it was alleged that no moneys had been expended by the guardian for the minor’s support. These exceptions came on for hearing in February, 1936, and testimony covering seventeen typewritten pages was taken. The effect of the testimony was thus described by the learned President Judge of the Orphans’ Court, Sando: “The record does not show that the guardian ever filed a petition in this court for an allowance for the maintenance and support of the minor.
 

 “While the testimony is conflicting, it appears that all the parties lived for a period of some months* in the
 
 *212
 
 same house and that the guardian afterwards moved next door and lived upstairs over a store, which he conducted. While it was admitted that the minor sometimes slept at the guardian’s home the preponderance and weight of the testimony shows that the minor was maintained and supported by her step-father, Frank Polito.”
 

 In an opinion filed the orphans’ court sustained the exceptions to the first three credit items above mentioned, allowing only the item of $23.50 for the cost of audit and account, and by an order entered April 23, 1936, confirmed the account as “the account of Lina Bianco, executrix of the estate of Frank Catanzaritti, deceased, who was the guardian of the minor.”
 

 Clearly the effect of this order was a finding that the guardian instead of having a claim against the minor’s estate for $474.99 was indebted to the estate in the amount of $1,080.19.
 

 Upon petition of appellee, setting forth that the account was then before the orphans’ court for adjudication and praying that distribution of the amount due be made to appellee as the mother and next friend of the minor, the orphans’ court, June 30, 1936, entered a decree of distribution, nisi, reading:
 

 “Fund for distribution ..................$1,080.19 Which fund is awarded as follows, viz: To Marie Catanzaritti, minor,
 

 “It is ordered and decreed that Lina Bianco, executrix of the- estate of Frank Catanzaritti, deceased guardian, as aforesaid, do make the distribution herein awarded to the person entitled thereto.”
 

 This decree became absolute July 15, 1936, but no successor in the guardianship seems to have been appointed.
 

 It was a certified transcript of the proceedings we have just reviewed that counsel for the¡ appellee filed in the court of common pleas on May 17,1937, and by their
 
 *213
 
 praecipe directed the prothonotary to “index the same as a judgment” for $1,080.19 against appellant, individually.
 

 Their proposition, as indicated by their praecipe and as maintained throughout their argument, is that they may hold appellant individually liable for the default of Frank Catanzaritti in administering the funds belonging to the estate of the minor for whom he was guardian, merely because she happened to have been designated by him as the executrix of his will. This contention is made although there was neither any finding by the orphans’ court, nor any evidence in that court, to the effect that appellant had come into possession as executrix of the deceased guardian, or in any other capacity, of a single dollar of the compensation installments which had been paid to him as the guardian of Marie Catanzaritti. In so far as the transcript upon which they rely is concerned, appellant’s statement, that “no funds whatsoever have come into her hands as executrix of Frank Catanzaritti” and that it was necessary to borrow money to pay his funeral expenses, stands unimpeached. If the legislature ever intended that an executor or administrator of a deceased guardian who has misapplied the entire estate of his ward can be held individually liable for the trust funds which should have been in the hands of the guardian at the time of his death, it would certainly have warned them of the perils of acting as such executor or administrator in unmistakable language.
 

 On June 16, 1937, appellant obtained a rule to strike off the judgment upon the ground that it was not supported by the transcript from the orphans’ court. Upon the discharge of her rule, the present appeal was taken to this court.
 

 The learned judge of the common pleas who refused to strike off the judgment seems to have been under the impression that when appellant filed the account of
 
 *214
 
 Frank Oatanzaritti as guardian of the minor she “by operation of law” became the “fiduciary” contemplated by Section 51(a) of the Fiduciaries Act of 1917, supra, and that the account so filed by her as the personal representative of the guardian became “her account” within the intendment of that section.
 

 After referring to the established principle that in settling the accounts of executors and administrators the jurisdiction of the orphans’ court is exclusive and its decrees cannot be collaterally attacked, the above quoted decree of distribution was interpreted as a “definitive order to Lina Bianco to pay the sum awarded in the adjudication, fl,080.19, to Marie Oatanzaritti,” i. e. an unqualified order that appellant, individually, pay the amount Frank Oatanzaritti owed the estate of Marie Oatanzaritti at the time of his death.
 

 Upon an examination of the entire record, as certified upon the appeal, we cannot agree either with the construction placed upon the statute by the court below or with its interpretation of the findings and decree of the orphans’ court.
 

 Section 18(e), sub-paragraph 1, of the Orphans’ Court Act of 1917, P. L. 363, 20 PS §2461, was also quoted, and apparently relied upon to some extent, in the opinion of the court below. It relates to the filing in the common pleas of orders of the orphans’ court “upon parties, other than fiduciaries.” We cannot see that it has any application; both the guardian and appellant were fiduciaries, but fiduciaries of different and separate estates.
 

 The non-liability of appellant to the estate of Marie Oatanzaritti, except as respects any funds or assets in the possession of her testator, Frank Oatanzaritti, at the time of his death and of which she became possessed by virtue of being the executrix of his estate, is firmly established by our statutory and decided law.
 

 Section 3(b) of the Fiduciaries Act, supra, 20 PS
 
 *215
 
 §350, expressly provides that an executor of a deceased executor shall in no case be deemed executor of the first testator. It is equally true that the executor of a deceased guardian does not succeed him in the guardianship of the estate of the ward. Appellant did not become a fiduciary of Marie Catanzaritti’s Estate:
 
 Bowman’s Appeal,
 
 62 Pa. 166;
 
 Sibbs v. Phila. Saving Fund Society,
 
 153 Pa. 345, 25 A. 1119; and
 
 Wagner’s Estate,
 
 227 Pa. 460, 76 A. 215.
 

 The duty of the personal representative of a deceased •fiduciary, who had not completed the administration of his trust at the time of his death, was clearly set forth by the Supreme Court in
 
 Wagner’s Estate,
 
 supra, at p. 464: “If an executor or administrator die before he completes the administration of the estate, it is the duty of his personal representative to settle an account for his decedent as such executor or administrator. If he neglects or refuses to do so, the orphans’ court will, upon application of an interested party, require him to file an account. When the account has been filed, it is subject to the same objections and exceptions as if it had been filed by the executor or administrator himself.”
 

 With respect to the extent of the liability of the personal representative of a deceased fiduciary to the beneficiaries of the original estate or to the successor in the trust, the inquiry is not what amount the account, as finally confirmed, shows the deceased fiduciary owed them at the time of his death, but what funds or assets actually came into the possession of the personal representative of the deceased fiduciary.
 

 In
 
 Nolde’s Estate,
 
 27 Pa. Superior Ct. 413, this court held that the administrator of a deceased administrator was only liable for the amount of property he actually received as constituting the estate of the deceased fiduciary, and not for the amount an auditor’s report showed the deceased fiduciary should have had. Even a succeeding fiduciary is liable only for what he has actually
 
 *216
 
 received from his predecessor. As was stated in
 
 Wagner’s Estate,
 
 supra, (page 464) : “It is the duty of an administrator de bonis non to settle and account for the part of the estate not administered by his predecessor in office, and he is chargeable with such assets
 
 and nothing more.”
 
 (Italics supplied)
 

 The transcript from the orphans’ court indicates that the principles to which we have referred were adopted and applied by that court in disposing of the various phases of this case as they arose from time to time. Its final decree must be interpreted in the light of the proceedings of which it was the conclusion.
 

 Clearly, the account there adjudicated and confirmed was not the account of appellant as executrix of the estate of Frank Catanzaritti but his account as guardian of the estate of Marie Catanzaritti. The legal effect of the action of the orphans’ court in sustaining the exceptions to the account as originally stated was a judicial determination that the estate of Marie Catanzaritti was a creditor of the estate of Frank Catanzaritti in the sum of $1,080.19 at the time of his death. The plain import of the decree is that appellant was ordered and directed to pay that amount to a proper representative of the minor’s estate, not out of appellant’s own individual funds or property, but out of such assets of the estate of Frank Catanzaritti as may have come into her possession as executrix thereof.
 

 When appellant failed to comply with the order, the estate of the minor was not without remedy; upon showing that appellant had possession of assets of the guardian’s estate which she refused to apply to the payment of his indebtedness to his ward’s estate, proceedings in contempt could have been instituted against her; or, if no such assets existed, as was the case here, recourse could have been had to the guardian’s bond.
 

 Instead of adopting either of these remedies, the representatives of the minor sought to hold appellant liable
 
 *217
 
 for the default of the guardian by attempting to apply the procedure authorized by Section 51(a) of the Fiduciaries Act, supra, to the situation disclosed by the present transcript. In our opinion, that section is not applicable and the judgment entered under it should have been stricken off because it is not supported by the transcript. As its invalidity appears from the face of the record, appellant chose the proper remedy.
 

 The judgment authorized by Section 51(a) may properly be entered only upon a transcript, or extract, from an orphans’ court record “showing the amount appearing to be due from or in the hands of any
 
 fiduciary,
 
 on the settlement of
 
 his accounts
 
 in the orphans’ court,......or by virtue of a
 
 decree
 
 of said court.” (Italics supplied) It appears upon the face of the only account settled in this case that it is not
 
 appellant’s account
 
 of her administration of any trust and that she is not the
 
 fiduciary
 
 whose account was filed, excepted to, and finally adjudicated. The fiduciary was Frank Catanzaritti and the account was his account (as stated for him by appellant) of his administration of his guardianship. The only “amount” appearing upon the transcript as due from any one is the sum of $1,080.19 which, according to the adjudication, should have been in his hands at the time of his death. No finding appears upon the transcript that any part of this sum ever came into “the hands” of appellant. The only matter in which appellant is shown by the transcript to have acted in a fiduciary capacity is with relation to the estate of Frank Catanzaritti of which she is the executrix and the transcript does not disclose that she ever filed any account of her administration of that estate. The section contemplates a fiduciary whose administration of some trust has been before the orphans’ court for adjudication. In this case the trust in question was the guardianship. Manifestly, appellant was not the fiduciary in that trust. As to a “decree” of the orphans’ court,
 
 *218
 
 within the contemplation of the section, we have already pointed out that the decree here involved can properly be construed only as one directing appellant to pay the sum mentioned therein out of the estate of the deceased guardian. It is true, as stated by the court below, that the decree cannot be attacked collaterally, that is, we must accept as conclusive the finding that the guardian misapplied $1,080.19 of the funds belonging to his ward’s estate:
 
 Bernhardt v. Taylor,
 
 223 Pa. 307, 72 A. 620; and
 
 Heffner v. Albright,
 
 231 Pa. 396, 80 A. 887.
 

 Granting that Frank Catanzaritti was an unfaithful guardian and that appellant was derelict in not filing his account of his guardianship until cited to do so, it by no means follows that she thereby became liable for his default. Yet, that is exactly the result of the refusal to strike off the judgment.
 

 It may be added that counsel for appellee at one stage of the proceedings recognized that the effect of the adjudication of the account in the orphans’ court was to make the estate of the minor a creditor of the estate of her guardian.
 

 On September 8, 1936, appellee petitioned the orphans’ court for a citation directed to appellant, as executrix of the estate of Frank Catanzaritti, deceased, to show cause why certain real estate of which he died seized, should not be sold to satisfy the award to the minor.
 

 In an opinion filed December 3, 1936, the orphans’ court held that, under Section 15(a) of the Act of June 7,1917, P. L. 447, the minor’s claim ceased to be a lien upon the guardian’s real estate at the expiration of one year from the date of his death (citing
 
 Oliver’s Appeal,
 
 101 Pa. 299, involving the same question except that the statutory limitation of lien was there fiVe years) and that it was accordingly without power to order the sale.
 

 For the reasons above stated the assignment of error
 
 *219
 
 to the order of the court below of December 15, 1937, discharging the rule to strike off the judgment is sustained.
 

 Order reversed and record remitted to the end that the rule to strike off the judgment may be reinstated and made absolute.