## Schwartz Estate

Before Sinkler, P. J., Klein, Bolger, Ladner, Hunter and Boland, JJ.

*J. Leon Rabben*, for exceptants.

*Herman J. Tahl*, contra.

LADNER, J., Auditing Judge.—Ferdinand Schwartz died on March 20, 1948, leaving a will, dated April 15, 1947, in which, after devising his real estate, 3032 Frankford Avenue, to his wife, Gizella Schwartz (a devise that was ineffective since decedent and Gizella Schwartz held title to the property by the entireties), he instructed his "executor Mr. Samuel Weinberg" his son-in-law, to sell all the stock in store on said premises, 3032 Frankford Avenue, Philadelphia, out of which to pay $200 to a son, Eugene Schwartz, and the balance "to be divided 50/50 equally between his wife, Gizella, and Mr. and Mrs. Samuel Weinberg" (being his daughter). All the rest, residue and remainder of his estate he gave to his wife, Gizella. Then he appointed Mr. and Mrs. Samuel Weinberg as "Executor" of his will.

At the time of decedent's death, his widow, Gizella, who was the stepmother of the son and daughter of decedent, was apparently on cordial terms with her stepchildren. For Samuel Weinberg renounced his right to act as executor. Through some oversight, it was not noted that Rose Weinberg had been designated in the will as coexecutor, an oversight easily explainable by the fact that throughout the holographic will testator gives directions to his executor (in the

singular) and the appointment of the daughter is contained in the words, Mr. and Mrs. Samuel Weinberg. At any event, when the will was probated and the renunciation filed, letters of administration c. t. a. were issued to Gizella, the widow of Ferdinand.

The harmonious relations between the stepchildren and the stepmother seemed to have continued until Gizella's death on August 26, 1948. There was testimony that there had been a family conference immediately after the funeral when the will was read, and according to Blum, who was present, the Weinbergs disclaimed and waived any interest in the estate. This the Weinbergs deny, but there is no denial that they encouraged Gizella to carry on the business until it could be sold as a going business. At least it is clear they were content with her action in keeping the store open. They made no protest nor demanded a sale of the store during the lifetime of Gizella. It is also clear that with them she consulted a broker to see whether the store could be sold, but as is usually the case, the parties in interest had an exaggerated idea of the value of the store.

With Gizella's death, the harmony which previously prevailed seems to have ended. Animosity developed between Blum, the brother of Gizella, who was executor under her will, and the Weinbergs. A petition was filed with the register of wills, alleging that, in effect, the grant of letters of administration c. t. a. to Gizella was improvident, and praying that they be revoked. The need for such a procedure after Gizella's death is certainly not clear, for the auditing judge can see no purpose served by entering a decree of revocation after the administratrix c. t. a. ceased to exist. A simple application for appointment would have seemed to suffice, unless the purpose, as later appears in the audit, was to contest all expenditures made by Gizella and deny her her commission.

From here on, the procedure taken by the respective parties became more involved and confused. Instead of Julius Blum, executor of Gizella, first filing an account on her behalf, the approved and settled practice, and then delivering to a succeeding fiduciary such assets as were ascertained to belong to Ferdinand's estate, Julius Blum, as a creditor, filed a petition for citation on November 19, 1948, on Rose Weinberg, executrix of the estate of Ferdinand Schwartz, to show cause why she should not file an account, vacate the store, and entire first floor and basement of premises 3032 Frankford Avenue, Philadelphia, and why she should not convert the assets of said estate into cash.

In the petition it is recited that after the death of Gizella, on September 30th Rose Weinberg took possession of all of the assets of Ferdinand Schwartz. This petition of Julius Blum was filed not as the fiduciary of Gizella but as a creditor of Ferdinand Schwartz's estate. His petition was met with an answer denying that he was a creditor and contained a series of charges against Gizella Schwartz, the deceased administratrix c. t. a. of Ferdinand's estate, that instead of complying with the provisions of the will, she conducted the business as her personal affair, converted profits to her own use, etc.

The petition and answer came on before the court for hearing and after argument was referred to Judge Bolger. Judge Bolger called respective counsel before him in an attempt to bring order out of chaos. He pointed out the duty of Blum to file an account in the first instance, and upon promise of counsel for Blum that this would be done, suggested the parties might well stipulate and settle their differences. The stipulation was agreed to be made but was not, in fact, ever made, so the proceedings on petition and answer remain undetermined.

However, counsel for Blum, in compliance with his promise to Judge Bolger, did file an account on February 28, 1949, which is entitled "First and Final Account of Gizella Schwartz, deceased, administratrix c. t. a. of the Estate of Ferdinand Schwartz, deceased, as stated by Julius Blum, executor of the estate of the said Gizella Schwartz, deceased", and this is the account which came before me for audit, and which I now adjudicate.

Under well-settled practice, an executor of a deceased fiduciary is required to account only for that which he receives from the dead hand of the deceased fiduciary and cannot be held individually liable for funds which *should* have been in the hands of the deceased fiduciary: Catanzaritti v. Bianco (No. 1), 131 Pa. Superior Ct. 207; Wagner's Estate, 227 Pa. 460. In the last cited case on page 464 it was said:

"If an executor or administrator die before he completes the administration of the estate, it is the duty of his personal representative to settle an account for his decedent as such executor or administrator. . . . When the account has been filed, it is subject to the same objections and exceptions as if it had been filed by the executor or administrator himself. An administrator de bonis non may be an exceptant. When it is finally confirmed by the court, it will disclose the extent to which the estate has been administered and the balance in the hands of the accountant's decedent. It will or should show the property received by the accountant's decedent, and the indebtedness of the estate paid by him, as well as any balance in his hands."

But with respect to the extent of the individual liability of the personal representative of a deceased fiduciary to the beneficiary of the original estate, or to the successor in trust, the inquiry is not what amount the account as finally confirmed shows the

deceased fiduciary owed them at the time of his *death*, but what funds or assets actually came into the possession of the personal representative of the deceased fiduciary: Cantanzaritti v. Bianco, supra; Nolde's Estate, 27 Pa. Superior Ct. 413.

In the account before me, the accountant charges himself with principal, consisting of goods, chattels and credits of decedent as per inventory and appraisement filed by Gizella Schwartz, administratrix c. t. a., on July 1, 1948, as follows: Stock of merchandise, consisting of dolls, school supplies, cigars, cigarettes, premises 3032 Frankford Avenue, consisting of showcases, $100, or a total of $925. Then follows a notation that these were delivered by a Julius Blum, executor of the estate of Gizella Schwartz, deceased, to Rose Weinberg, executrix of the estate of Ferdinand Schwartz, deceased, on October 9, 1948.

This is a wholly incorrect practice. In Wagner's Estate, 227 Pa. 460, supra, where the Orphans' Court of Lackawanna County, on proceedings to show cause directed the administrator of a deceased executrix to surrender, deliver up and pay over all moneys, goods and assets remaining in the hands of the deceased executrix, the Supreme Court reversed and held this to be an erroneous practice, and held: The personal representative of a deceased executrix *should not deliver over any assets nor can he be compelled to deliver over any until he first files an account on the behalf* of the deceased fiduciary. The Supreme Court, on page 467 quoted further from the earlier case of Sibbs v. Philadelphia Saving Fund Society, 153 Pa. 345, and said:

" 'It is essential to the protection of the estate of the deceased administrator, and his sureties, that his account be finally settled before a right of action accrues against them for what he has received or reduced to his possession in his lifetime; for in this way only

can they have the benefit of the credits to which his services and disbursements entitle them.' "

In the account before me, the accountant Blum has really accounted for nothing. He simply informs the court that he did an unauthorized act and then asks credit for advances made by his deceased fiduciary. I might well refuse to adjudicate this account until the assets or proceeds thereof were returned and a new account filed but this would merely prolong the unseemly litigation. Moreover, as both counsel joined in litigating the matters raised by objections filed to the credits only on the account, and consumed two days' time with testimony taking 199 pages, out of consideration of the taxpayers of this county, I will strike out only the statement that all stock has been delivered and assume that it is constructively still in the possession of the accountant. His delivery to Rose Weinberg having been unauthorized, it follows as a matter of law he would have the right to recover it, and since we administer our practice in accordance with equitable principles, I will consider that "done which ought to have been done" and proceed to adjudicate the question raised after one further preliminary observation.

At the audit, I ruled that exceptant had the burden in the first instance of proving that the accountant actually received more than accounted for, as well as the burden of proving any loss, wastage or misappropriation by the deceased fiduciary, and that ruling was not error. See Jones' Estate, 48 Dauph. 247, citing Gilson's Estate, 18 Phila. 119; Fitch's Estate, 8 Lack. L. N. 150, 155; Thomas' Estate, 4 Kulp 446.

I proceed now to dispose of the objections filed by Mr. Rabben on behalf of Rose Weinberg, who succeeded Gizella Schwartz, admx. c. t. a. of the estate of Ferdinand Schwartz.

By objection no. 1, it was contended that all of decedent's assets were not included and that the inventory was not itemized. Gizella Schwartz, deceased administratrix, filed her inventory and appraisement on June 10, 1948. She died on August 26, 1948.

It is true, correct practice requires an itemization of the stock of merchandise inventoried in the lump sum of $825, and the same is true of fixtures; but these objections go merely to matter of form, and become unimportant now since objection should have been made by parties in interest during the lifetime of the deceased fiduciary. Suffice it to say, the present accountant is not responsible for the improper form in which the inventory was filed.

As the auditing judge understands it, the complaint of objectant under this objection is twofold; first, because there is not included in the inventory certain household goods which dwindled down to some linens that decedent owned before he married Gizella in 1932. But whether they were in existence at the time of Ferdinand's death is not clear, nor is it clear what, if anything, was bought after the marriage or by whom. Mr. Rabben in his brief relies on the proposition that household goods in possession of the husband at the time of his death, presumably belong to him. It is true, that was said in Matheny Estate, 164 Pa. Superior Ct. 18, 22 (1949), which follows Chadwick Estate, 154 Pa. Superior Ct. 157, where the same thing was said, which in turn relies on Kauffman v. Stenger et al., 151 Pa. Superior Ct. 313, page 316, where it was said, "In general, where husband and wife live together in the same house . . ., the ownership of personal property though in the possession of both, is presumed to be in the husband and not in the wife." The learned opinion writer then cites Rhoads v. Gordon, 38 Pa. 277, as authority for that proposition. Rhoads v. Gordon, however, was decided in 1861, and the

Superior Court apparently overlooked the fact that Married Women's Property Act of May 23, 1887, P. L. 170, and June 8, 1893, P. L. 344, sec. 1 (48 PS §31) made that case obsolete. These acts completely unshackled married women and in specific terms gave them the same right to own and possess property in the possession of the wife vested in the husband. The Act of 1848 replaced the common-law rule only to the extent of permitting a wife to own personal property if acquired by the separate funds. However, the cases construing the act placed the burden of proof on the wife: Bradford's Appeal, 29 Pa. 513 (1857) ; Rhoads v. Gordon, supra. The change of law effected by the later Married Women's Property Acts of 1887 and 1893 was emphasized by Judge Head in Fink's Estate, 77 Pa. Superior Ct. 267, where at page 272, he said:

"Since the Acts of 1887 and 1893, possession of personal property by a wife raises the same presumption of ownership by her that would exist in other cases. Against all of the evidence offered to support the title in the wife, apart from the legal presumption that would be sufficient, if not overthrown by proof, the husband administrator answered nothing. His learned counsel must rely entirely on the old common law proposition that during coverture a wife could have no possession even of personal property apart from her husband. But the situation that then existed has been entirely changed by the statutes we have referred to until now it must be clear that, notwithstanding the fact that a married woman lives with her husband, she may own and possess property of her own and that possession carries with it every incident that would follow the like possession by any other individual."

It is significant, too, that the Rhoads v. Gordon case, supra, relied on by the Superior Court decisions, was not cited for this proposition since the Married

Women's Property Acts of 1887 and 1893 by the Supreme Court.

Under the circumstances, the auditing judge adheres to McCarter's Estate, 36 D. & C. 625 (1939), decided by this court, where we hold "that where household furniture and furnishings are in the joint possession of the husband and wife living together at the time of the husband's death, a fair presumption arises, in the absence of proof to the contrary, that the title thereto is in both husband and wife by entireties, which would make it vest absolutely in the widow upon the husband's death." (Syllabus) Since there was no proof of title to overcome this presumption, this part of objection no. 1 is dismissed.

The second part of objection no. 1 is based upon the proposition that the deceased administratrix, Gizella, in her inventory and appraisement, appraised the store fixtures and the stock in trade at too little a value. In support he called Dorothy S. Blau, 1420 Chestnut Street, to testify that she had a real estate office, specialiing in business opportunities; that she called at 3032 Frankford Avenue where the business of the deceased Ferdinand was carried April 15, 1948; that she looked the stock over but made no inventory. She spent about an hour there and ventured her opinion that the store was worth no more than from $2,500 to $3,000, including the good will of the going business. The store carried cigarettes, cigars, candies. On cigarettes and cigars the profit is about 10 percent, and on other items from 25 to 30 percent. The witness further said it was a type of store for children. The witness frankly said that she arrived at the figure because Gizella asked $5,000 for the store, and she cut it roughly in half, allowed $500 for fixtures and $2,000 for stock over which she cast a bird's eye view without making a detailed inventory. She said she relied on the fact that they (Mr. Schwartz, Mrs. Weinberg and

Mr. Blum) told her they thought they had about $3,500 to $4,000 of stock, which the witness cut in half. It is obvious that her valuation was little more than a guess.

Objectant called another witness, Mrs. Ethel Levin, whose testimony the auditing judge finds is also vague and indefinite, both as to the time when she made her examination and the reason for it. Samuel Weinberg and Rose Weinberg, his wife, who are parties in interest, testified also that they did not take an inventory of the stock either, and their testimony likewise was vague and uncertain.

On behalf of the accountant there was offered in evidence two personal property returns made to the city covering the stock in the store. It was shown that deceased, Ferdinand, returned his inventory to the tax office for the end of the year 1946 at $625, return having been filed March 14, 1947. The return for calendar year 1947, filed March 8, 1948, showed his valuation of his inventory at the end of the year 1947 to be $795. Ferdinand died March 20, 1948, 12 days after the return was filed. After carefully considering all the testimony pro and con, I rule that the evidence fails to establish the incorrectness of the inventory or that decedent Ferdinand died possessed of any personal property not accounted for. Objection no. 1 is dismissed.

Objection no. 2 is made to the credit taken in the account for moneys due the deceased fiduciary, Gizella, for reimbursement of money advanced for payment of Mt. Sinai Hospital bill amounting to $346.15, covering a period from February 6, 1948, to March 11, 1948. The accountant presented receipted hospital bills to support the credit, showing the amount of $346.15 was actually paid by Gizella to the hospital. I find from the credible evidence that this hospital bill was in fact paid by the deceased fiduciary out of her own funds

and money borrowed by her. Without unduly pro-longing the adjudication, it is sufficient to cite the cross-examination of Samuel Weinberg as supporting this finding. Objection no. 2 is dismissed.

Objection no. 3 is made to the claim of credit for $320 advanced by Gizella Schwartz, deceased fiduciary, for testator's funeral. The undertaker (Goldstein Memorial Chapel) testified that his bill was paid by the assignment of a death benefit of $250 paid by Pennsylvania Lodge No. 274 IODA, of which Gizella's husband, decedent, was a member. The right of widow to these death benefits as beneficiary was sufficiently established by the secretary of the lodge, which is a subsidiary of the Independent Order of Brith Abraham. He testified that in accordance with the bylaws produced at the trial, upon a member's death, death benefits are payable to the widow. Such death payments have been held repeatedly not to form part of a decedent's estate but are payable to beneficiaries directly. However, the balance of $120 of the $370 credit claim, appears to have been paid by the present accountant out of his own funds *after* the death of Gizella. The auditing judge finds as a fact that this credit is allowed in that sum. The balance of $120 was paid by Blum.

This will be discussed under objections 11 and 12.

Objection no. 4 relates to appraisers' fees appearing in the account under date of June 7, $10. Basis of the objection to this fee is that the inventory and appraisement was not for the benefit of the estate because the original grant of letters to Gizella was improper and subsequently revoked. No objection is made to the amount and there is no merit in the reason urged by counsel. Up until the time that Gizella's letters were revoked, she had the right—in fact it was her duty—to administer the estate according to the requirements of the law, one of the requirements being that the

inventory and appraisement should be promptly filed. The objection is dismissed.

Objection no. 5 is made to the credit claimed by Julius Blum, the accountant, for the widow's exemption of $500 on behalf of the deceased widow, Gizella Schwartz. Whether a widow who dies before the accounting of her husband's estate is entitled to credit for exemption depends entirely upon whether she made a claim before her death. If she did, her subsequent death does not affect the right. See Hunter's Common Place Book, page 1390, and cases there cited. Where a widow is also a fiduciary, not much formality is required, for, as said in Davies' Estate, 146 Pa. Superior Ct. 7, exemption acts have received a liberal interpretation consistent with their conception. To show that the widow made claim before her death, counsel for the accountant offered in evidence the inheritance tax affidavit signed by the widow on June 15, 1948, in which she expressly made claim for her widow's exemption. This I ruled at the audit is a sufficient demand to establish the right to the claim. I still adhere to this ruling and find as a fact she did make a demand in her lifetime and is entitled to it. In so ruling, I have given consideration to Matheny Estate, cited by the learned counsel for objectant, 164 Pa. Superior Ct. 18, at page 24. There the court below found as a fact that the widow never claimed her exemption. This objection is likewise dismissed.

Objection no. 6 is to the allowance of any commission to Gizella Schwartz for the reason that her administration was unlawful, and not for the benefit of the estate, because she converted the assets and proceeds from operating the store to her own use and generally acted negligently. The amount of commissions claimed is $46.25. As I have refused to find that the administration was improper, or that she converted any property to her own use or that she acted unlawfully or

negligently, it follows that this objection must be dismissed.

Objection no. 7 is directed to the credit item dated April 4th for reimbursement for money paid by Gizella Schwartz to I. Lodge for merchandise purchased by decedent, $52.90. At the audit counsel for the accountant offered in evidence cancelled checks from the personal account of Gizella Schwartz, paid to I. Lodge. There was no contradiction of this evidence. At the audit, I dismissed this objection and I still adhere to that ruling.

Objection no. 8 is made to the credit item of April 16th, reading "Reimbursement for money paid by Gizella Schwartz, deceased, to Molly Day Wood for nursing services rendered decedent $30.00". Molly Day Wood, the nurse, to whom this item was paid, appeared and testified, identifying her receipt for nursing services, which she testified were rendered to decedent, Ferdinand Schwartz. In his brief, Mr. Rabben argues he bases his objection on a presumption that when an executor pays a debt of the estate he does so with his own money. As a general proposition this may be so, and the burden would be upon a living fiduciary to demonstrate clearly that the fund used to pay a debt due by the estate was, in fact, the executor's own funds. But this rule can hardly be applied to a case such as this, especially where the assets were not converted into cash. This objection is therefore dismissed.

Objection no. 9 goes to item under date of April 20th, being a credit asked to reimburse Gizella Schwartz for money paid to H. Segal and Co. for merchandise purchased by decedent, in the amount of $17.55. At the audit the accountant's counsel agreed that this credit might be stricken from the account. Accordingly, it is so stricken from the account.

Objection no. 10 is to a credit item under date of April 20th for reimbursement for moneys paid by Gizella Schwartz, deceased, to P. Hochman & Company for merchandise purchased by decedent in the sum of $138.48. At the audit it developed when Morris Hockman was called, to whom the sum was paid, that there was an error in the amount. Accordingly, Mr. Tahl, representing the accountant, reduced the credit to $105.73. Mr. Rabben admitted that that amount was paid to Mr. Hochman, but insisted the burden was upon the accountant to prove that Gizella paid it out of her own funds. He cited Bentley's Estate, 196 Pa. 497, for that proposition. I do not think the rule controls under the circumstances in this case for the reason stated in dismissing objection no. 9. This objection is dismissed.

Objections nos. 11 and 13. Objection no. 11 relates to the credit taken in the account, page 2, for sums advanced by Julius Blum, the accountant, for money paid by him to the Goldstein Memorial Chapel on account of the funeral of decedent, Ferdinand Schwartz. According to the undertaker $50 was paid in April by Blum, who paid also the balance of $70 after Gizella's death.

Objection no. 13 relates to $250 due him for money paid by him to the Mt. Sinai Hospital for services rendered decedent. These objections must be sustained. As pointed out in Gavaghan's Estate, 14 Dist. R. 205, this is not the time for presentation of claims against Ferdinand Schwartz's estate by creditors other than the deceased fiduciary. These items of credit stricken from the account without prejudice to the right of Julius Blum to present them at such accounting as may hereafter be filed by Rose Weinberg, executrix of Ferdinand Schwartz's estate.

Objection no. 12 is a credit taken for the sum due Gizella Schwartz, deceased, for use and occupation of

3032 Frankford Avenue in the amount of $186.60. After hearing the testimony in this case, I fix the fair use and occupation of the premises at $10 per month, which for five months would be $50. This credit is therefor reduced to $50. This is agreed to by Mr. Rabben.

The last objection to the counsel fee of Herman J. Tahl in the sum of $75 was withdrawn after the court at the audit indicated it was both a proper expense and fair in amount.

Objection no. 14 was not pressed by Mr. Rabben in his brief and is therefore regarded as withdrawn.

Accordingly, in summary, credit item of $17.55 is stricken out (objection no. 9) ; credit item of $138.48 is reduced to $105.73 (objection no. 10) ; credit items of $50, $70 and $250, claims of Julius Blum in reimbursement of sums advanced by him on account of Ferdinand's funeral expenses, etc. (objections nos. 11 and 13) are stricken out without prejudice, however, to Julius Blum to present his claims at the audit of the account of Rose Weinberg, executrix of will of Ferdinand Schwartz, deceased; credit item of $186.60 is reduced to $50 (objection no. 12) ; and in summary the total of credits thus disallowed amount to $556.90, thus reducing the total of credits as shown by the account from $2,144.48 to $1,587.58. Since the total assets or debits are shown and found to be $925, composed of stock of merchandise and fixtures, and the total of allowed credits amounts to $1,587.58, the deficit is the difference of $662.58 instead of $1,219.48, as shown by the account. Since the assets of stock and fixtures valued at $925 are intact but now actually in possession of Julius B. Blum, who is stated as the instant owner on behalf of deceased administrator c. t. a., the auditing judge contents himself with a formal award of such assets, subject to distribution already made as respects the same to Rose Weinberg,

the subsequent qualifying executrix of will of Ferdinand Schwartz, deceased, affixed with a claim which is in effect in the nature of a judgment in favor of the personal representative of the estate of Gizella Schwartz, deceased administratrix c. t. a., in and for the sum of $1,587.58, which represents money advanced by or actually due Gizella Schwartz, as accountant and individually, particularly as respects her exemption of $500 and for the payment of the administration expenses, preferred claims such as nursing and funeral expenses and debts of Ferdinand Schwartz, deceased. Except for the fact that Rose Weinberg, executrix of the will of Ferdinand Schwartz, deceased, has possession of the assets, there would be no occasion for any award to her at all in the matter of the audit of the present account, since as foresaid the executor of the will of Gizella Schwartz, deceased, would be entitled to the whole thereof because of Gizella's advancements of her own funds or because of that due her on account of her exemption, being in an amount greatly in excess of the value of the unconverted assets.

*J. Leon Rabben,* for the exceptants.
*Herman J. Tahl,* contra.

PER CURIAM, June 24, 1949.—Most of the questions raised by the many exceptions filed in this rather small estate concern findings of fact. The auditing judge has at great length carefully analyzed the confused situation which exists here. He has seen and heard the witnesses; his findings are entitled to the same weight as the verdict of a jury. We so hold, and dismiss all of the exceptions and sustain the adjudication.